ATLANTIC TRUST & DEPOSIT CO. v. TOWN OF LAURINBURG.

(Circuit Court of Appeals, Fourth Circuit. July 18, 1908.)

No. 816.

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—CONTRACTS—CONSTRUCTION—CONTRACT TO COMPLETE WATER SYSTEM.

A town had plans and specifications made for a complete water and sewer system, and advertised for bids for the same, all of which were rejected because they exceeded $34,000, which was all the town purposed to expend. The engineer of the Southern Contracting Company, which was the lowest bidder, then proposed that his company would construct the system within such limit, if certain changes were made in the specifications, and, his proposal being accepted, a resolution prepared by him was adopted "that the plans and specifications by * * * be revised for a completed plant, without extras, and be constructed by the Southern Contracting Company at cost plus 10 per cent. for material furnished and work done, the total amount not to exceed $34,000." The company then gave a bond, with defendant as surety, conditioned for the performance of the contract "for the amended construction of a water and sewer system" for the town "upon a basis of 10 per cent. upon the materials and labor furnished, not to exceed $34,000." The bond also gave defendant the right to complete the contract on default by the principal. The company, after doing a part of the work, abandoned the same, and, defendant refusing to complete it, the town did so, as authorized by the contract, at a total cost largely exceeding $34,000. *Held*, that the contract was not one to do work for the town on account of its water and sewer system to the extent of $34,000 on a commission of 10 per cent., but was one for the completion of the system in accordance with the amended specifications at a cost not to exceed $34,000, and less if the actual cost, including 10 per cent. profit to the company, should be less, and that defendant was liable to the town for the damages sustained by its breach, to the extent of the penalty named in the bond.

**2. SAME—ACTION ON BOND—EVIDENCE.**

In an action on such bond, in which the declaration alleged a breach of the contract by abandonment of the work, to the damage of the town in the full penalty of the bond, the town was entitled to prove what it did in completion of the work in accordance with the specifications, and the amount expended therein.

**3. BONDS—ACTION—PLEADING.**

In an action of debt on a bond with collateral conditions, the declaration is not required to set forth the damages alleged, but only the breaches; and when the breach alleged is the abandonment of the contract, the performance of which the bond was given to secure, and the damages are alleged to equal the full penalty of the bond, the specific details of damages cannot be required to be set out.

**4. PRINCIPAL AND SURETY—SURETY COMPANIES—RULES GOVERNING OBLIGATION OF SURETY.**

The strict rules governing the liability of sureties growing out of the ordinary relations of creditor and simple surety are not as fully applicable to the contracts of a bonding company insuring the performance of contracts as a business and for profit.

In Error to the Circuit Court of the United States for the Eastern District of Virginia, at Norfolk.

John L. Jeffries and Harry K. Wolcott (Jeffries, Wolcott & Wolcott and Floyd Hughes, on the brief), for plaintiff in error.

M. L. John and Luther B. Way (Pender & Way, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and BOYD and DAYTON, District Judges.

DAYTON, District Judge. This was an action of debt upon a bond with collateral conditions, instituted by the town of Laurinburg, a municipal corporation of North Carolina, against the Atlantic Trust & Deposit Company, a Virginia corporation, engaged in the guaranty and bonding business. The defendant entered some 9 different pleas and filed a statement of 12 different grounds of defense. A trial by jury was had, resulting in a verdict and judgment for $9,000 for the plaintiff and the defendant took 16 bills of exception thereto. Twenty-two assignments of error are now here relied on to reverse this judgment.

It seems the town, having a limited sum of money in hand for the purpose, undertook the installation of a complete water and sewer system. To this end, through a commission created by it, full plans and specifications were prepared for such system on the basis of a cost not to exceed $34,000. Bids were advertised for, and the Southern Contracting Company, a Virginia corporation, was found to be the lowest bidder at a price of $37,500. This and all other bids were rejected, because the town authorities determined not to exceed in cost the $34,000 limit. This was on July 7, 1906. On the 19th of the same month, Kitson, engineer of the Southern Contracting Company, again entered into negotiation with the town's commission, and agreed to reduce the contracting company's bid to $34,000, provided some extras in the way of house connections, in no way impairing the system as a whole, were cut out. This offer was accepted, and the contract was signed by the town and by the company, and the

$1,000 check in forfeit was deposited. Kitson went back to Norfolk, and after a lapse. of time returned and announced that his company could not do the work outlined in the plans and specifications for $34,000, and that, unless some other arrangement could be made, his company would have to forfeit the $1,000. He urged that there was still a large amount of work set forth in the plans and specifications which could be dispensed with, and that if the town would have its engineer revise its plans, leaving off all the streets and parts of the work specified by him, his company would undertake to construct a complete system, according to such revised plans, for not to exceed $34,000, and complete it by February 15, 1907. The town acceded to this, and incorporated into the contract by means of a resolution prepared by Kitson himself:

"That the plans and specifications by J. M. Bandy be revised for a completed plant without extras, and be constructed by the Southern Contracting Company at cost plus 10 per cent. for material furnished and work done, the total amount not to exceed $34,000."

This was on August 8, 1907, and Bandy did revise his plans, eliminating all streets and parts of streets agreed upon. Kitson took this contract to Norfolk, and returned by mail the indemnity bond of the contracting company, signed by the defendant trust company as surety, upon which this action was brought, whereby the contracting and trust companies bound themselves jointly and severally to the town in the penalty of $9,000 to indemnify any default in the conditions and obligations of the contract. The contracting company went on with the work until about 60 per cent. of it was completed and near $33,500 of the price had been expended, then abandoned it, went into bankruptcy, and its receiver declined to finish the work. The defendant trust company also refused to complete the work and denied liability. The town did complete it at an expense of more than $10,000.

Notwithstanding the numerous exceptions and assignments of error, the case does not involve any great difficulty. Most of the controversy turns upon the construction to be given the clause of the contract written into it by the contracting company itself, through Kitson, its engineer and agent, which we have quoted above, and which was guaranteed by the trust company for a monetary consideration. The words used in this guaranty bond are:

"Whereas, said principal has entered into a certain written contract, a copy of which is hereto attached and made a part hereof, bearing date the 8th day of August, A. D. 1906, wherein they agree to furnish materials and labor for the amended construction of a water and sewer system for the town of Laurinburg, N. C., upon a basis of 10 per cent. upon the materials and labor furnished, not to exceed $34,000, in accordance with plans made by J. M. Bandy, engineer in charge, by February 15, 1907: Now, therefore," etc.

By the trust company it is contended substantially that, under the terms of the contract referred to, the contracting company only undertook to do work for the town on account of its sewer and water system to the extent of $34,000 on a commission of 10 per cent. profit over and above cost of labor and material. On the contrary, it is contended by the town that the true construction shows that this company undertook to secure to the town a completed water and sewer

system, according to certain amended plans and specifications, at a price not to exceed $34,000, which was to include a 10 per cent. profit to it on the actual cost of labor and material. The terms of the contract, of the specifications, of the indemnifying bond, and the conditions and circumstances, all show beyond all question, in our judgment, that the first contention cannot be true, and that the second one, as held by the court below, was the true purpose and intent of the parties. It is needless to say the contract is to be read as a whole, and each clause thereof is to be read in connection with the others, so as, if possible, to give effect to each and all. It is needless, also, to say that the party who writes a contract, or any of its clauses, must have such read most favorably to the other party, where any ambiguity exists. The clause in question may well and properly be construed to provide that the plans of Bandy, the town's engineer, were to be revised—

"for a completed plant without extras, and be constructed [that is, the complete plant, as provided for by the revised plans] by the Southern Contracting Company at cost plus 10 per cent. for [that is, over the cost of] material furnished and work done, the total amount [that is, of cost of complete plant, as provided by the revised plans and the 10 per cent. compensation] not to exceed $34,000."

The obligation of the bond was to guarantee "the amended construction of a water and sewer system," and it was to be done in accordance with plans made by J. M. Bandy, engineer in charge, by February 15, 1907. With nothing else before us than these two clauses, one from the contract and the other from the bond, how could we draw any other conclusion than the one given to them by the court below? We must remember, too, that in addition to this the advertisement set forth the intention to be "to let the entire work"; that "lump sum bids" were called for, by reason of which "no classification of material" was to be specified, "hence any and all qualities of material must be included in the lump sum bid"; that the contract in other clauses than the one in question provided that the contracting company agreed "to construct one or both [water and sewer] systems in a good substantial and workmanlike manner," to begin construction "not later than August 7, 1906," and "complete the same, and the whole thereof, on or before 15th day of February, 1907"; that "all plans, drawings, profiles, and specifications on file in the mayor's office, and all subsequent drawings, supplementing more particularly the work herein contemplated, are mutually held to be controlling parts of this contract"; that, "to prevent all suits and litigation, it is further agreed by and between the parties to this contract that the engineer shall in all cases determine the amounts of work done which are to be paid for under the contract; that he shall be the judge of the manner of construction, the quality of materials, and of the interpretation of the specifications; that he shall decide all questions which may rise relative to the carrying out of this contract, and that his estimates, figures, measurements, directions, and decisions shall be final and conclusive"; that 10 per cent. of the money was to be retained by the town "until the whole work is properly completed, and all the provisions of the contract complied with to the satisfaction

of the engineer"; that, "in case the contractor shall fail in the performance," then the town should have the right either "to relet the undertaking of said contract, or any part thereof," or "complete the work" itself at the cost of the contractor.

It is further to be remembered that the bond, wholly prepared by the trust company, surety, expressly guaranteed to save harmless the town "from pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of the said contract," upon conditions, first, that notice within 30 days of default should be given the trust company, surety; second, that such surety company should have, at its option, the right to complete the contract; third, that the surety company should not be liable in any event for a sum in excess of the penalty of the bond, nor subject to any action unless instituted within six months after first breach of the contract; and, fourth, that such surety should not be liable for damages for work destroyed by act of God, the public enemies, mobs, riots, civil commotion, or by employés on strike. With all these provisions in the contract and bond, no other conclusion can be reached than that this was a contract for a "completed system" and not "on a percentage basis, 10 per cent., plain force job." It would be in no effect different from a contract made by A. with B. for the building of a house according to fixed plans, the cost of which, in no event, should exceed $34,000, and to be as much less as the cost of labor and material with 10 per cent. added for the builder's profit should turn out to be less than this sum. The liability to complete the system if it should exceed this sum was clearly assumed by the contract and guaranteed by the bond. Having reached this conclusion, the other defenses set up can be readily disposed of, because they are purely technical in character.

Defendant's exceptions 1, 2, and 3 relate to the overruling of the motion to exclude the contract as evidence. The contract was executed in triplicate, and the receiver of the contracting company and Bundy, the mayor of the town, clearly identified the copy introduced as one of the triplicate ones.

Exceptions No. 4 and 6 were to the admission of evidence tending to show what steps the town took to protect and complete the work after default made, and are based upon the idea that such evidence tended to prove special damages not set forth in the declaration. We can see no merit in this contention, for the reason, among others, that the declaration alleges substantially the breach of the contract to have arisen from the abandonment of, and failure to complete, the work, to the damage of the town the full penalty of the bond. It expressly sets forth the terms of the bond based upon the contract. The bond gave the surety company the option to complete the work. The contract gave the town the right to complete it if the contracting company or its surety did not. In completing it the town necessarily had to show that it had, with reasonable care as to expense and within the bounds of the specifications, completed the work at a cost in excess of the penalty of the bond. This evidence tended directly to show this, and was entirely proper and pertinent. Again, in an action of debt upon a bond with collateral conditions, the declaration is not required to set forth the damages alleged, but only the

breaches.   If these breaches relate to specific acts, such as, in this case, might have been the use of defective pipe or other material, the improper and defective excavations made, and other specific charges of a like character, the defendant before trial could have asked the court to require the plaintiff to file a definite statement of damages to be claimed as a result of such breaches in particular details of the work; but this demand must be made before trial, and, where the breach alleged is simply one of abandonment of the work, the damages for which are alleged to equal the full penalty of the bond, no such statement, even if asked for before trial, would be required to be filed.

Exceptions 5 and 8 are taken to the court's refusal, first, after conclusion of plaintiff's evidence, and, second, after the introduction of all the evidence, to direct a verdict for the defendant.  In support of these motions it was urged, in addition to the matters set forth in the exceptions already considered, that (1) material changes were made in the location and character of the work;  (2) the time of payment was changed, and made semimonthly, instead of monthly;  (3) the 10 per cent. was not reserved;  and (4) the town guaranteed and paid an order for $12,000 worth of material.   All of these objections were without merit.   The contract and specifications, fairly construed, we think, authorized reasonable changes under the direction of the town's engineer, as he was to be the judge of the "manner of construction" of the system, and his plans and "subsequent drawings, supplementing more particularly the work herein contemplated, are mutually held to be controlling parts of this contract."   But, if this were not so, it is undisputed that the changes made were all in favor of the contractor, and in the aggregate lessened his liability under the contract several hundred dollars.   Fully recognizing the rule of strictissimi juris as applying to contracts growing out of the ordinary relation of creditor and simple surety, we cannot and do not recognize this rule as applying to contracts underwritten by these bonding corporations, whose business it is (and a profitable one, too, it would seem, from the number organized and existing) to insure, for a monetary consideration, the obligee against a failure of performance on the part of the principal obligor.   In such cases, before such bonding company can be released, it must show that the changes made in a contract like this, guaranteed by it, operated injuriously to affect its rights and liabilities. The Supreme Court of the United States has said:

"The rule of strictissimi juris is a stringent one, and is liable at times to work injustice.   It is one which ought not to be extended to contracts not within the reason of the rule, particularly when the bond is underwritten by a corporation which has undertaken for a profit to insure the obligee against a failure of performance on the part of the principal obligor."   United States F. & G. Co. v. U. S., 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242.

The very reason for the existence of this kind of corporations, and the strongest argument put forward by them for patronage, is that the embarrassment and hardship growing out of individual suretyship that give application for this rule is by them taken away; that it is their business to take risks and expect losses.   If, with their

superior means and facilities, they are to be permitted to take the risks, but avoid the losses, by the rule of strictissimi juris, we may expect the courts to be constantly engaged in hearing their technical objections to contracts prepared by themselves. It is right, therefore, to say to them that they must show injury done to them before they can ask to be relieved from contracts which they clamor to execute. In this case no injury, but benefit, came to this defendant from all the changes made, and from the town's guaranteeing the material order and advancing the money for the contracting company to advance and perform the work, and its exceptions because of these are groundless.

Exception 7 relates to the refusal of the court to allow testimony to be introduced touching a wholly independent contract between the town and the contracting company for work done in "the mill district." Such testimony was wholly irrelevant, and was properly excluded.

Finally, exceptions 9, 10, 11, 12, 13, 14, and 15 relate to instructions refused and to charges given by the court to the jury. No. 16 is to a refusal to set aside verdict and award new trial. It is sufficient for us to say that we have carefully considered the charge delivered to the jury by the court below, and in our judgment it was a clear, concise, fair, and complete exposition of the law governing the case.

We see no error in the judgment of the court below, and it is affirmed.