## PICKENS COUNTY v. NATIONAL SURETY CO.

(Circuit Court of Appeals, Fourth Circuit. June 15, 1926.)

No. 2479.

**1. Courts ⬅⟶406(1).**

Circuit Court of Appeals, in passing on sufficiency of evidence, must view it in light most favorable to party against whom verdict was directed, and draw all inferences and conclusions therefrom which can legitimately be drawn in his favor.

**2. Counties ⬅⟶206(1).**

Under South Carolina law, approval of claim by county board ordinarily has effect of adjudication that money claimed thereby is due by county.

**3. Highways ⬅⟶113(4)—Approval of road contractor's estimates held not to estop county to deny contractor's right to additional payment.**

Where contract for county road work provided that acceptance of work or part payment would not operate as waiver of contract or any power reserved therein, approval of estimates subsequent to modification of contract *held* not to estop county from denying that contractor had reorganized forces, so as to be entitled to additional payment for work previously done.

**4. Contracts ⬅⟶261(3).**

Covenant of contractor to perform work over period of time, involving large expenditures, is dependent on that of other party to make payments substantially at time specified, and in absence of excuse failure to pay installment will justify contractor's refusal to complete work.

**5. Highways ⬅⟶113(4).**

Withholding by county of certain sums due under road contract *held* not breach going to substance, which would justify rescission or abandonment, where contractor had received on other estimates more than he was entitled to, even including balance withheld.

**6. Contracts ⬅⟶262.**

Where contractor received portion of estimates, and continued work under contracts, and collected later estimates, jury might infer waiver of right to rescind or abandon for failure to pay part of original estimate.

**7. Highways ⬅⟶113(4).**

Road contractor could not rescind or abandon contract because of county's failure to pay certain estimate, when he had actually received more than he was entitled to, including such estimate.

**8. Highways ⬅⟶113(5)—Surety held not released by premature payment to road contractor, where it was not injured or prejudiced.**

Surety *held* not released from liability on road contractor's bond securing amended contract, providing for certain payments on satisfactory reorganization of crew, because of payment to contractor of one-half agreed differ-

ence on back work in advance of satisfactory reorganization, where surety was not injured or prejudiced, in that damage from contractor's breach exceeded amount of bond plus the advancement, and would have been more if advancement had not been made.

**9. Principal and surety ⬅⟳99.**

Bonding ·company, insuring against failure of performance of contract for monetary consideration, must show it has suffered injury by reason of departure from strict terms of contract, before it can for that reason be discharged from liability.

**10. Principal and surety ⬅⟳117.**

Payments to contractor in advance of time specified are not such departure from or change in contract as will discharge liability of bonding company, in absence of injury therefrom.

In Error to the District Court of the United States for the Western District of South Carolina, at Greenville; Henry H. Watkins, Judge.

Action by Pickens County against the National Surety Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded for a new trial.

E. M. Blythe and B. F. Martin, both of Greenville, S. C. (Martin & Blythe, of Greenville, S. C., and Craig & Keith and W. E. Findley, all of Pickens, S. C., on the brief), for plaintiff in error.

H. J. Haynsworth, of Greenville, S. C. (C. F. Haynsworth, of Greenville, S. C., on the brief), for defendant in error.

Before WADDILL and PARKER, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

PARKER, Circuit Judge. This action was instituted to recover on two bonds, in the sum of $8,500 and $28,590, respectively, executed by the National Surety Company, to guarantee the performance by J. B. Ross, Jr., of two contracts for road construction entered into by him with Pickens county, S. C. At the conclusion of the evidence the District Judge directed a verdict in favor of the defendant surety company, and the correctness of this ruling is the only point presented by the assignments of error. The county was the plaintiff in the court below, and the surety company was defendant, and they will be so designated in this opinion.

On January 5, 1923, Ross contracted with plaintiff to build two sections of highway from the town of Pickens to the North Carolina line, known as state highway projects Nos. 162–B and 164, and gave the two bonds sued on, with the defendant surety company as surety, for the faithful performance of the contracts. These contracts provided, among other things, that Ross should be paid 20 cents per cubic yard for common excavation, and 70 cents per cubic yard for solid rock excavation, and that he should complete the work within 240 working days. Ross began work under these contracts, but suspended work in January, 1924, and notified plaintiff that he would have to go into bankruptcy unless he was given an increase in the compensation allowed him for the work. A meeting was thereupon held in Columbia in February, 1924, between Ross and representatives of plaintiff and the state highway department, at which Ross submitted a proposal in writing that the entire excavation called for in the contracts be paid for at 40½ cents per cubic yard, including both common excavation and solid rock, that this revised price should apply to work already done, as well as future work, and that he be allowed an extension of time of 240 working days for the completion of the work under the contracts. The proposal stipulated that any increase coming due, under this revised arrangement, for work already done, should not be paid unless and until his forces on the two projects should be reorganized in a manner satisfactory to the county board and the state highway department. This proposed change in the contracts .was approved in writing by the defendant surety company, and was submitted to the county board and approved by it March 29, 1924.

After the conference in February, Ross proceeded with the work under the contracts, and estimates thereof were prepared by the highway department as of March 20th, which were presented to the county board on April 4th and approved for payment. In these estimates, the amount due for excavation work was computed on the unclassified basis, in accordance with the amendment to the contracts, and the estimates included all of the work previously done, with credits for the amounts previously paid. The amount included as additional payment for work already done was $7,741.77. Ross was promptly paid the amount due under the estimates for current work, and was also paid the sum of $3,879.35, which was approximately one-half of the amount calculated as additional payment for work previously done. He continued with the work until May 31st, when he abandoned it and refused to proceed further under the contracts. Between March 29th and May 31st, plaintiff paid Ross, on account of road work, the sum of $16,560.39, of which amount the sum of $4,822.53 was

paid on the May estimates, which were not payable until June 10th. After he refused to proceed further with the work, the county, after due notice to him and the defendant surety company, advertised for bids and let contracts for its completion. Under these contracts, it has been required to pay, over and above the amounts stipulated in the contracts with Ross, a sum considerably in excess of the amount of the bonds sued on.

The facts stated up to this point are practically undisputed. The dispute arises in connection with plaintiff's reasons for not paying to Ross the remaining $3,800 difference in work done prior to the modification of the contract, and Ross' reasons for abandoning the work on May 31st. Defendant contends that plaintiff breached its contract with Ross, in not paying him the $3,800 prior to May 31st, and that this default on the part of plaintiff rendered it impossible for Ross to proceed with the work, and justified him in refusing to proceed further. Plaintiff contends that the extra compensation for the work done prior to the change in contract was not to be paid unless and until Ross had organized his forces in a manner satisfactory to plaintiff and the state highway department, and that this was never done; that plaintiff's representatives agreed with Ross in February that, if the modification of the contract should be accepted, plaintiff would pay him one-half of the amount due for difference in work previously done, at the time of payment of the March estimates, so as to enable him to reorganize his forces, and would pay the remainder thereof in 60 days thereafter, if the forces had been properly reorganized; that the one-half due with the March estimates according to this arrangement was paid according to promise, and that the remainder was not paid, because Ross' forces were not properly reorganized; that, instead of Ross not being paid the amount due him, the May estimates were paid in advance of the time when they were payable, and that, at the time he quit work, he had received more than $1,000 in excess of the amount due him under the contract, including the $3,800 in dispute; that Ross was behind with his work, and was unable to finish it in the time specified in the contracts; that he had allowed his forces to run down, and was doing the work in such manner as clearly to indicate that his sole purpose was to get the maximum under the monthly estimates; that he had no intention of finishing the jobs; and that plaintiff's refusal to pay him the $3,800 demanded was not his real reason for abandoning the work, but a mere pretext given for abandoning the contracts, which he intended to abandon at all events.

In reply to these contentions of plaintiff, defendant contends that by approving for payment the March estimates, including the difference in work already done, plaintiff bound itself to make immediate payment of the entire $7,741.77, and estopped itself from disputing the proper organization of Ross' forces, and that, if in fact the forces were not properly reorganized, the payment of the $3,879.35 in advance of the proper organization of the forces was such a modification of the terms of the contract as would release it from liability under the bonds. Two questions are presented, therefore, for our determination: (1) Whether the evidence conclusively shows such a breach of the contracts on the part of plaintiff as justified Ross in rescinding them or abandoning further performance thereunder; and (2) whether there was such a variation of or departure from the terms of the contracts as would release defendant from liability on the bonds.

[1] With respect to the first question, the plaintiff offered evidence tending to show that the forces of Ross were never reorganized in a manner satisfactory to the county board and the state highway department; that at the conference in Columbia, in February, plaintiff's representatives had agreed that at the time of the payment of the March estimates they would pay one-half of the amount due under the amendment to the contract, for work previously done, in order that he might use the money in reorganizing his forces; that at the same time it was agreed that the remainder of the difference to be paid on account of work previously done should not be paid until 60 days thereafter, so that it might be determined whether the forces had been properly reorganized, in accordance with the conditions contained in the addition to the contract; and that, pursuant to this agreement, plaintiff paid Ross $3,879.35 at the time of paying the March estimates, but had not paid him the remainder, because, after beginning the reorganization of his forces, he had let them run down, and had never reorganized them to the satisfaction of the county board or the state highway department, or in such manner as to show that he had the intention of carrying on the work under the contracts. The defendant offered testimony in contradiction of this evidence on the part of the plaintiff; but, in

passing upon the sufficiency of the evidence, the law is well settled that we must view it in the light most favorable to the party against whom a verdict has been directed, and must draw all inferences and conclusions therefrom which can legitimately be drawn in his favor. When so viewed, there was certainly evidence from which the jury might properly have inferred that there had been no satisfactory reorganization of Ross' forces, and that, under the express terms of the amendment to the contract, the remainder of the difference due for work previously done was properly withheld by plaintiff, and that plaintiff was not guilty of any breach of contract in withholding same.

[2, 3] The defendant contends, however, that the approval by the county board of the March estimates, which included the calculation of the difference due for work previously done, and the certification of same for payment, was an adjudication under the South Carolina law that the amount so certified was due and payable, and that this necessarily and conclusively implied that Ross' forces had been reorganized to the satisfaction of the county board as required by the amended agreement. It is true that, under the law of South Carolina, the approval of a claim by the county board ordinarily has the effect of an adjudication that the money claimed thereby is due by the county; but in this case the approval of the estimates does not preclude the county from showing a failure on the part of the contractor to comply with terms of the contract as amended, because it was expressly provided in the contracts that "neither the acceptance of the party of the first part, the engineer or any of their agents or employees, *nor any certificate by the party of the first part for payment of money,* nor any payment for, nor acceptance of the whole or any part of the work by the party of the first part, or engineer, * * * *shall operate as a waiver of any portion of the contract or of any power herein reserved by the party of the first part, or any right to damages herein provided.*" (Italics ours.) It was the manifest purpose of this provision that the approval of estimates, and the certification thereof for payment, should not operate as an estoppel on the county, or as a waiver of any of the terms or conditions of the contracts, and should not prevent the county from relying on the failure of the contractor to comply with the terms and conditions thereof. The approval of the estimates, therefore, did not, as claimed by the defendant, constitute a conclusive admission by the county that Ross' forces had been satisfactorily reorganized; but the effect of such approval should have been left to the jury, together with all other facts, to be considered by them in determining whether or not there had been a satisfactory reorganization.

[4, 5] But, even if the approval of the March estimates be considered a final adjudication that Ross was entitled to the entire amount calculated therein as difference in the work previously done, it by no means follows that he was entitled to rescind or abandon the contract for failure of plaintiff to pay the $3,800. It is true that where, under a contract, labor is to be performed and materials furnished by a contractor over a considerable period of time, involving large expenditures on his part, and payments are to be made through such period, as the work progresses, the covenant of the contractor to perform the work is dependent upon that of the other party to make the payments substantially at the times specified in the contract, and, in the absence of other provisions or circumstances excusing it, failure to pay an installment when due will justify the contractor in refusing to complete the work. United States Fidelity & Guaranty Co. v. Robert Grace Contracting Co. (C. C. A. 3d) 263 F. 283; Guerini Stone Co. v. Carlin Construction Co., 248 U. S. 334, 39 S. Ct. 102, 63 L. Ed. 275. But the facts of this case do not fall within that rule. The county has not failed to pay the installments due to the contractor. On the contrary, it paid him $8,557.16 on the March estimates, or more than two-thirds of the entire amount, including the difference calculated on the back work. When this was tendered him, he did not refuse to receive it or abandon the contracts, but accepted it and proceeded with the work. The entire amount of the April estimates, $2,886.70, was paid him; and the May estimates, amounting to $4,822.53, were paid him in advance of the time when they were payable. When he quit work, he had received, according to the evidence of plaintiff, approximately $1,000 more than he was entitled to demand at that time, even including the $3,800 balance on back work. The withholding of the $3,800, under the circumstances, even if due and payable, would not be a breach going to the substance or root of the contract, which would justify rescission or abandonment by the contractor, in view of the payment to and receipt by him of the sums mentioned, which amount in the aggregate to $16,560.39.

"To permit abandonment, it is necessary that the failure of performance go to the substance of the contract." 13 C. J. 657.

"Before partial failure of performance of one party will excuse the other from performing his contract, or give him a right of rescission, the act failed to be performed must go to the root of the contract." 6 R. C. L. 1014; Chamberlin v. Booth, 135 Ga. 719, 70 S. E. 569, 35 L. R. A. (N. S.) 1223. [6, 7] There can be no question, furthermore, that the receipt by the contractor of the $8,557.16 on the March estimates, the continuing of work under the contracts, and the collection of the amounts due under the estimates of April and May, constituted evidence from which the jury might infer a waiver of the right to rescind or abandon the contracts for failure to pay the $3,800 with the March estimates. 6 R. C. L. 990, 1022; Williston on Contracts, vol. 2, p. 1329; Miami Cycle & Mfg. Co. v. Robinson (C. C. A. 6th) 245 F. 556, 158 C. C. A. 22; Jeffrey Mfg. Co. v. Central Coal & Iron Co. (C. C.) 93 F. 408. And certainly the contractor could not rescind or abandon the contracts for failure of the county to pay the $3,800, at a time when he had actually received more than he was entitled to demand in any view of the case.

[8-10] It appearing, therefore, that the court could not direct a verdict for defendant on the ground that the contractor was justified in rescinding or abandoning the contract for breach on the part of plaintiff, the only question which remains is whether the defendant has been released from liability on the bonds sued on by reason of plaintiff's having paid the contractor the one-half of the difference due for back work in advance of the satisfactory reorganization of his forces. We think that this question must also be answered against the defendant. There is nothing in the evidence which shows that the defendant was injured in any way by this payment to the contractor, or that its rights were in any way prejudiced thereby. On the contrary, the evidence is that plaintiff has sustained damage in excess of the amount of the bonds plus this advancement to the contractor; and the damage would have been greater, and not less, if the advancement had not been made, and the contractor had not been enabled thereby to do a part of the work under the contracts.

We do not see, therefore, how the advancement to the contractor could possibly have caused injury to defendant, and it was calculated to benefit the defendant, in that it enabled the contractor to proceed with work, the performance of which the defendant had guaranteed. It is well settled that the rule of strictissimi juris, ordinarily applied in relief of an individual surety, is not applied in case of compensated sureties, and that where a bonding company, for a monetary consideration, has insured against failure of performance of a contract, it must show that it has suffered some injury by reason of departure from the strict terms of the contract, before it can for that reason be discharged from its liability. Atlantic Trust Co. v. Laurinburg (C. C. A. 4th) 163 F. 690, 90 C. C. A. 274; Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 S. Ct. 142, 48 L. Ed. 242; Hill v. American Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437; Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; National Surety Co. v. Lincoln County (C. C. A. 9th) 238 F. 705, 151 C. C. A. 555; American Bonding Co. v. U. S. to Use of Francini (C. C. A. 3d) 233 F. 364, 147 C. C. A. 300; note in 12 A. L. R. 382, and cases cited. And payments to a contractor in advance of the time specified in the contract are expressly held not to be such a departure from or change in the terms of the contract as will discharge from liability a bonding company which has guaranteed its performance, in the absence of a showing that the bonding company has suffered injury therefrom. Atlantic Trust Co. v. Laurinburg, supra; National Surety Co. v. Lincoln County, supra; American Bonding Co. v. U. S. to Use of Francini, supra.

For the reasons stated, we think that the learned District Judge erred in directing a verdict for the defendant. The judgment of the District Court is accordingly reversed, and the cause is remanded for a new trial.

Reversed.