## MARYLAND CASUALTY CO. v. FOWLER et al.

Circuit Court of Appeals, Fourth Circuit.
April 9, 1929.

No. 2798.

J. S. Manning, of Raleigh, N. C. (Fred S. Hutchins, of Winston-Salem, N. C., and John H. Manning, of Raleigh, N. C., on the brief), for appellant.

Julius C. Smith, of Greensboro, N. C. (P. W. Glidewell, of Reedsville, N. C., A. L. Brooks, E. S. Parker, Jr., C. R. Wharton, E. J. Martenet, R. R. King, and Chas. A. Hines, all of Greensboro, N. C., Glidewell, Dunn & Gwyn, of Reidsville, N. C., Brooks, Parker, Smith & Wharton, King, Sapp & King, and Hines, Kelly & Boren, all of Greensboro, N. C., and D. H. Parsons, of High Point, N. C., on the brief), for appellees.

Before WADDILL and PARKER, Circuit Judges, and McDOWELL, District Judge.

PARKER, Circuit Judge. This suit was instituted in the court below by the Maryland Casualty Company to determine its liability under a contractor's bond covering the erection of a school building. The defendants were E. W. Fowler, the contractor, the county board of education of Rockingham county, N. C., the obligee under the bond, and certain furnishers of materials who had filed

claims thereunder. The cause was referred to J. E. Alexander, Esq., as special master, who, in an able and painstaking report, found that the company was liable to the county board of education in the sum of $9,169.74 for the cost of completing the building and to the materialmen in the sum of $5,045.43. This report was confirmed by the District Judge, and from the decree rendered thereon the casualty company has appealed. It makes two contentions: (1) That the claims of the furnishers of materials were not protected by the bond; and (2) that it was discharged from all liability thereunder on account of failure of the board of education to give notice in accordance with its terms of the default of the contractor.

On the first point the facts are that the board of education, on the 21st day of June, 1922, entered into a contract with Fowler to construct a school building at the price of $44,489.80. To secure compliance with this contract it required a bond of him in the sum of $22,000, which he executed with the casualty company as surety. The bond was conditioned upon the principal's indemnifying the obligee against any loss or damage directly arising from failure of the principal to faithfully perform the contract, and one of its provisions was that no right of action should accrue upon it to any person other than the obligee. By reference, however, it incorporated all of the provisions of the contract which it guaranteed, one of which was that the contractor should furnish and pay for all material, labor, etc., required for the performance of the work, and should furnish and pay for a satisfactory surety bond, equal to 50 per cent. of the contract price, as a guaranty that the building would be built according to the plans and specifications, that the contract would be complied with, and that all bills for labor and material used on the work would be paid in full.

The casualty company's position that there is no liability under the bond to the furnishers of materials is based upon the contention that the bond is one strictly of indemnity, and that it expressly provides that no right of action shall accrue to, or for the use or benefit of, any one other than the obligee. It was executed prior to the enactment of chapter 100 of the Public Laws of North Carolina of the Session of 1923, which provides that every bond given pursuant to the requirements of section 2445 of the Consolidated Statutes shall be conclusively presumed to have been given in accordance therewith, whether it be drawn to conform to the statute or not, and the contention is made that, under the doctrine of such cases as Page Trust Co. v. Carolina Const. Co., 191 N. C. 664, 132 S. E. 804, and Warner v. Halyburton, 187 N. C. 414, 121 S. E. 756, the surety is not liable for the claims of materialmen.

Most of the cases upon which the company relies, however, are distinguishable from the case at bar, in that they did not involve a contract expressly providing that the contractor should pay for labor and materials and should give a bond guaranteeing their payment. The contract in the instant case does so provide, and it is by reference made a part of the bond itself. This distinguishes it from the North Carolina cases relied upon, and also from the case of U. S. v. Starr (C. C. A. 4th) 20 F.(2d) 803. As the bond was executed prior to the 1923 amendment to section 2445 of the Consolidated Statutes, it is, of course, to be construed without reference to the amendment; but, even when so construed, we think that it clearly imposes upon the company liability for the claims of materialmen. The exact question was before this court in Hartford Accident & Indemnity Co. v. Board of Education (C. C. A. 4th) 15 F.(2d) 317, where the statute of West Virginia was substantially the same as that of North Carolina prior to the amendment of 1923, and we held in that case that such a bond did cover such claims. This holding, we think, is in accordance with the decisions of the Supreme Court of North Carolina. Scheflow v. Pierce, 176 N. C. 91, 97 S. E. 167; Orinoco Supply Co. v. Shaw Bros. Lumber Co., 160 N. C. 428, 76 S. E. 273, 42 L. R. A. (N. S.) 707. And it is also in accord with well-reasoned decisions in other jurisdictions. Peake v. U. S., 16 App. D. C. 415; Speir v. U. S., 31 App. D. C. 476; Royal Indemnity Co. v. Northern Granite & Stone Co., 100 Ohio St. 373, 126 N. E. 405, 12 A. L. R. 378.

In Ideal Brick Co. v. Gentry, 191 N. C. 636, 132 S. E. 800, Chief Justice Stacy clearly states the rule applicable in such cases as follows:

"The principle is well established by many authoritative decisions, here and elsewhere, that in determining the surety's liability to third persons on a bond given for their benefit and to secure the faithful performance of a building contract as it relates to them, the contract and bond are to be construed together. Mfg. Co. v. Andrews, 81 S. E. 418, 165 N. C. 285, Ann. Cas. 1916A, 763. In application of this principle, recoveries on the part of such third persons, usually laborers and materialmen, though not

expressly named therein, are generally sustained where it appears, by express stipulation, that the contractor has agreed to pay the claims of such third persons, or where by fair and reasonable intendment their rights and interests were being provided for and were in the contemplation of the parties at the time of the execution of the bond [citing cases]. The obligation of the bond is to be read in the light of the contract it is given to secure, and ordinarily the extent of the engagement entered into by the surety is to be measured by the terms of the principal's agreement."

In the case at bar the bond was taken to guarantee the performance of a contract for the construction of a public building. Under the law of North Carolina in effect at the time, such a building was not subject to liens created under the mechanics lien statute; but, in lieu thereof, the law provided that the board of education should require the contractor to execute a bond conditioned upon the payment for labor and materials. C. S. § 2445. The contract provided, not only that the contractor should pay for these, but also that he should furnish bond guaranteeing their payment, as well as that the contract would be complied with. This contract was by reference made a part of the bond, and these provisions were thereby incorporated in it as fully and completely as if written out therein totidem verbis. We have a case, therefore, where not only by fair intendment were the rights and interests of laborers and materialmen being provided for as required by statute, and as shown by the terms of the contractor's agreement, but also one where the terms of this agreement were expressly made a part of the bond itself. In such case it is clear that the rights of laborers and materialmen are protected. To hold otherwise would deny all force and effect to the provision of the contract incorporated in the bond that the latter should guarantee that all bills for labor and material should be paid in full, would convict the board of education of violating the provisions of section 2445 of the Consolidated Statutes, and would place the company in the absurd position of executing a bond in violation of the terms of a contract, and at the same time incorporating the contract in the bond.

■ It is argued that the provision of the bond to the effect that no right of action shall accrue upon or by reason of it to any person other than the obligee, precludes the right of any one else to recover thereunder. But, as the claims of laborers and materialmen were protected by the bond, this provision, in so far as it affects them, is void, because contrary to the public policy of the state as expressed in section 2445 of the Consolidated Statutes. Ingold v. City of Hickory, 178 N. C. 614, 101 S. E. 525; Hartford Accident & Indemnity Co. v. Board of Education, supra.

■ The second point, that the casualty company is discharged from liability because of failure to give notice of default, rests upon the following provision of the bond, made one of the conditions precedent to right of recovery thereunder, viz.: "That in the event of any default on the part of the principal in the performance of any of the provisions and conditions of said contract a written statement of such default with full details thereof shall be delivered to the surety promptly and in any event within ten days after the obligee shall learn of such default. * * * "

The contract provided that the work should be completed by November 15, 1922, or sooner, if possible, but made no provision that time should be of the essence of the contract, or that any stipulated sum should be paid for delay in completion. It contemplated extensions of time, however, providing that if the contractor should be delayed in the prosecution or completion of the work by certain enumerated contingencies, the time should be extended on certificate by the supervising architect. It also provided that, if the contractor should delay the progress of the work so as to cause loss for which the owner should become liable, he would reimburse the owner for such loss.

The work was not finished on November 15th; but the board of education did not declare the contractor in default or give notice of default to the company. On the contrary, it allowed him to proceed with the work and made progress payments in accordance with the terms of the contract. The local agent of the company knew that the work had not been completed, and kept the company completely informed as to its progress. The contractor was allowed to continue work until February 24, 1923, when he abandoned the contract and left for parts unknown. The company was immediately notified by telegram of this fact, and was further notified by letter from the architect in charge on February 27th, three days later. No claim is made against the company for damage on account of delay and there is no evidence that it sustained any loss or damage as the result of not being notified within 10 days that the building had not been completed on November 15th.

Under these circumstances, we do not think that the company was discharged from liability by reason of the fact that the board of education did not give notice of default when the building was not completed on the day specified in the contract. While there is some conflict in the decisions on this point, we think that the correct rule is that failure to give such notice is a defense to a claim for delay or demurrage only, and that it constitutes no defense to an action arising from breach of the other covenants of the contract. Community Bldg. Co. v. Maryland Casualty Co. (C. C. A. 9th) 8 F.(2d) 678; Ætna Indemnity Co. v. Town of Comer, 136 Ga. 24, 70 S. E. 676; Van Buren County v. American Surety Co., 137 Iowa, 490, 115 N. W. 24, 126 Am. St. Rep. 290, 293.

The bond here sued on was given to guarantee the performance of a contract containing many provisions, and, as we have seen, to insure the payment of the claims of laborers and materialmen. It could not have been intended that the right to recover thereunder for damages sustained on account of substantial breaches of the contract or that the rights of laborers and materialmen to be protected, should be dependent upon the board of education's giving notice of every minor breach or default which might occur as the contract was being performed. The reasonable interpretation of the provisions of the bond is, not that failure to give notice of such a default as is relied on here releases the surety from all liability, but that the giving of such notice is a condition precedent to the right to recover under the bond for such default. The essential thing in the contract was not the completion of the building on a certain date, but its construction according to the plans and specifications. If it should not be completed by the date provided, failure to give notice to the surety would preclude the right to recover on the bond damages for delay in completion; but there is no reason why the failure to give such notice should preclude the right to recover for final abandonment of the contract and failure to construct the building in accordance with its terms, if notice of this default was duly given.

The rule is well settled in this circuit that a compensated surety is in effect an insurer, that its contract will be construed as an insurance contract most strongly in favor of the party or parties protected thereby, that forfeiture on technical grounds will not be favored, and that the strictissimi juris rule of the law of suretyship will not be applied for its protection. Atlantic Trust & Deposit Co. v. Town of Laurinburg (C. C. A. 4th) 163 F. 690; Pickens County v. National Surety Co. (C. C. A. 4th) 13 F.(2d) 758; Maryland Casualty Co. v. Ohio River Gravel Co. (C. C. A. 4th) 20 F.(2d) 514, Id. (C. C. A.) 21 F.(2d) 744; Southern Surety Co. v. Plott (C. C. A. 4th) 28 F.(2d) 698; Fidelity & Casualty Co. v. Metal Window Products Co. (C. C. A. 4th) 30 F.(2d) 56. See, also, Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 S. Ct. 142, 48 L. Ed. 242; U. S. for use of Hill v. American Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437; Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206.

In U. S. for use of Hill v. American Surety Co., just cited, the Supreme Court, speaking through Mr. Justice Day, said: "The rule which permits a surety to stand upon his strict legal rights, when applicable, does not prevent a construction of the bond with a view to determining the fair scope and meaning of the contract in the light of the language used and the circumstances surrounding the parties."

And in Atlantic Trust & Deposit Co. v. Town of Laurinburg, supra, this court, speaking through Judge Dayton, said of surety companies: "The very reason for the existence of this kind of corporations, and the strongest argument put forward by them for patronage, is that the embarrassment and hardship growing out of individual suretyship that give application for this rule is by them taken away; that it is their business to take risks and expect losses. If, with their superior means and facilities, they are to be permitted to take the risks, but avoid the losses, by the rule of strictissimi juris, we may expect the courts to be constantly engaged in hearing their technical objections to contracts prepared by themselves. It is right, therefore, to say to them that they must show injury done to them before they can ask to be relieved from contracts which they clamor to execute."

There is authority for the position, also, that failure to give notice under a bond such as this will not discharge the company, in the absence of a showing of loss or damage resulting therefrom, which is not present here. Community Bldg. Co. v. Maryland Casualty Co., supra (C. C. A. 9th) 8 F.(2d) 678; Van Buren Co. v. American Surety Co., 137 Iowa, 490, 115 N. W. 24, 126 Am. St. Rep. 290; Bross v. McNicholas, 66 Or. 42, 133 P. 782, Ann. Cas. 1915B, 1272; School District v. McCurley, 92 Kan. 53, 142 P. 1077, Ann. Cas. 1916B, 238; Montpelier v. National Surety Co., 97 Vt. 111, 122 A. 484,

33 A. L. R. 489. And see, also, New Amsterdam Casualty Co. v. U. S. Shipping Board Emergency Fleet Corp. (C. C. A. 4th) 16 F.(2d) 847.

We do not base our decision on this last ground, however, but cite these authorities as showing that the courts have not been disposed to release the surety from liability merely because the obligee has not given notice of the failure of the contractor to complete a building within the time specified in the contract.

There is yet another reason why we think that the surety was not discharged in this case. Although the contract did provide for the completion of the building by November 15th, and the board of education might have declared the contractor in default at that time and taken over the work, it did not do so. On the contrary, it allowed him to proceed, made progress payments to him for the work done, and impliedly consented that he be given additional time. Under the contract as thus modified, therefore, there was no default until the contractor abandoned the work on February 24th. The only question then is: Did such extension of the contract release the surety? We think not. There is no showing that the surety was damaged in any way by the extension, or that its obligation was materially modified thereby, and it is well settled that minor changes in a contract, not adding materially to the obligation of a compensated surety, or resulting in loss or damage to it, will not release it from liability. Atlantic Trust & Deposit Co. v. Town of Laurinburg, supra; Pickens County v. National Surety Co., supra.

There was no error, and the decree of the District Court is affirmed.

Affirmed.