## MARYLAND CASUALTY CO. v. MORGAN COUNTY COURT et al.

### No. 3167.

Circuit Court of Appeals, Fourth Circuit.

Oct. 19, 1931.

Modified on Rehearing April 29, 1932.

D. H. Hill Arnold, of Elkins, W. Va. (G. F. Cushwa, of Baltimore, Md., and R. E. O'Connor, of Charleston, W. Va., on the brief), for appellant.

Charles S. Trump, of Baltimore, Md., for appellee R. F. Feller.

Clarence E. Martin, of Martinsburg, W. Va. (H. D. Allen, of Berkeley Springs, W. Va., and Martin & Seibert and C. M. Seibert, all of Martinsburg, W. Va., on the

brief), for appellee County Court of Morgan County.

Before PARKER and NORTHCOTT, Circuit Judges, and WAY, District Judge.

NORTHCOTT, Circuit Judge.

This is a suit in equity brought by appellant, surety, upon a performance bond given by W. J. and J. T. Gephart, contractors, to the county court of Morgan county, W. Va., for the construction of a certain highway in said county, against all known creditors of said Gepharts furnishing labor and material upon said contract and against the county court of Morgan county.

On the 12th day of June, 1922, W. J. and J. T. Gephart were awarded a contract for the construction of a certain highway in Morgan county, W. Va., known as the "Paw Paw Great Cacapon Road," said road being in two sections; the "Paw Paw" road being about three miles of macadam; and the "Great Cacapon" road being about five miles of grading and draining.

The bond secured not only the performance of the contract, but contained covenants to pay all and every person furnishing material or performing labor in and about the construction of said contract.

On the 2d day of November, 1923, W. J. and J. T. Gephart became insolvent and subsequently adjudged bankrupt for acts done as of said date. At said time the Morgan county contracts were not completed, and the Gepharts owed to various creditors the approximate sum of $11,500 for labor and materials used upon said road. Maryland Casualty Company advanced the money for the past-due pay roll owing by the Gepharts, taking assignments from the laborers and a deed of trust from Gepharts. On or about the 9th day of November, 1923, the Gepharts abandoned all work upon the highway, and Maryland Casualty Company completed the road at an approximate expense of $16,500, exclusive of creditors' claims.

There were various matters in controversy between the county court and the casualty company, and the cause was referred by the judge below to a special master, who reported that the casualty company was entitled to recover from the county court the sum of $23,297.38, with interest from April 1, 1926, the date of the filing of said report.

The only creditor whose claim had not been settled was appellee R. F. Feller, trading as Standard Concrete Pipe Company, and the casualty company contested this claim on the ground that the said Gepharts had unduly extended credit to Feller.

The master in his report found against Feller and in favor of the casualty company. On exceptions to the master's report, the judge below set aside the findings of the master; found that the county court of Morgan county owed the casualty company nothing, and gave R. F. Feller judgment against the casualty company in the sum of $1,002.33, with interest from April 1, 1926, from which action of the court below the casualty company brought this appeal.

It is contended on behalf of the county court that the casualty company did not take over the completion of the road work when the Gepharts, as contractors, abandoned their contract, and that there was no formal notice of abandonment, and that the casualty company took over the contract of the Gepharts as assignee and not as surety, and therefore in all respects stood in the shoes of the Gepharts with regard to all transactions of the county court.

The specifications under which the contract was let contained the following provisions: "If the Contractor * * * shall discontinue the prosecution of the work, or if the Contractor shall become insolvent or declared bankrupt, or commit any act of bankruptcy or insolvency * * * or shall make an assignment for the benefit of creditors, or from any other cause whatsoever shall not carry on the work in an acceptable manner, the Engineer shall give notice in writing to the Contractor and his Surety, of such delay, neglect or default, specifying the same, and if the Contractor, within a period of ten (10) days after such notice shall not proceed in accordance therewith, then the County Court shall, upon written certificate from the Engineer of the fact of such delay, neglect or default and the Contractor's failure to comply with such notice, have full power and authority, without violating the contract, to take the prosecution of the work out of the hands of such Contractor, to appropriate or use any or all materials and equipment on the ground as may be suitable and acceptable and may enter into an agreement for the completion of said contract according to the terms and provisions thereof, or use such other methods as in his opinion shall be required for the completion of said contract in an acceptable manner. * * * "

It is admitted that default of the contractors was not formally made, and it seems clear that the county court did have the privilege and the right to designate who should

undertake the completion of the work, yet it is also true that the casualty company only entered into undertaking to complete the contract because of the bond it had given and the force of its obligation as surety. As was ably said by Judge Parker of this court in Lacy v. Maryland Casualty Co., 32 F.(2d) 48, 53: "The point is made that there was no default under the contract, and that consequently the right of subrogation on the part of the casualty company did not arise. It is true that the work under the contract was not interrupted and no notice of default was given to the casualty company, but it appears that on May 24, 1923, the contractor had become insolvent and was unable to proceed with his contract and that the company, without waiting for notice, advanced the funds to carry on the work, notified the highway commission that it was doing so, and eventually took the contract over. There can be no question that the company did this, not as a volunteer, but because of legal necessity, i. e., because it had guaranteed the performance of the contract and the contractor was financially unable to perform it. Under the principles laid down in the Prairie State Bank Case [164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412] and Henningsen Case [208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547], therefore, it is clear that the right of subrogation arose. Being compelled because of its contract to advance money to prevent a breach of the contract of the principal, the surety is in no different position, we think, from what it would occupy if it had made the advancement after breach or had performed the contract itself. It is the payment under necessity because of the contract of suretyship, and not the breach of the principal's contract, which entitles the surety to subrogation."

We do not think, however, in view of our conclusion as to other questions involved, that it is necessary to decide the question as to whether the casualty company completed the contract as assignees.

■ It was contended by the county court, and clearly proven, as we see it, by the evidence, that the contractors, either by a mistake or carelessness, almost amounting to fraud, were clearly overpaid in the estimates given them by the engineers, an amount in excess of the sum claimed by the surety. These overpayments would, as we see it, be properly chargeable against the retained percentage due contractors, and the balance of such wrongful overpayment would be a proper charge against the bond.

This overpayment was brought about through what was a wrong system of measurement of the work done, and wrong estimates given by the engineer. The court below found the mistakes to be so gross as to practically amount to fraud.

The retained percentage is retained primarily for the benefit of the party letting the contract, but also for the surety and for all parties interested, but, if payment is made by mistake, contracting party has an undoubted right to deduct from it for retained percentage. Claiborne Parish School Board v. F. & D. Co. (C. C. A.) 40 F.(2d) 577, and cases there cited.

■ It is contended on behalf of appellant that part of the retained percentage was wrongfully paid the contractors by the county court, but, even if this be true, the overpayment by mistake to the contractor more than offset any claim of this kind, and there could be, because of failure to retain the percentage, nothing due the surety on that account. As was said by this court in Pickens County v. National Surety Co., 13 F.(2d) 758, 762:

"On the contrary, the evidence is that plaintiff has sustained damage in excess of the amount of the bonds plus this advancement to the contractor; and the damage would have been greater, and not less, if the advancement had not been made, and the contractor had not been enabled thereby to do a part of the work under the contracts.

"We do not see, therefore, how the advancement to the contractor could possibly have caused injury to defendant, and it was calculated to benefit the defendant, in that it enabled the contractor to proceed with work, the performance of which the defendant had guaranteed. It is well settled that the rule of strictissimi juris, ordinarily applied in relief of an individual surety, is not applied in case of compensated sureties, and that where a bonding company, for a monetary consideration, has insured against failure of performance of a contract, it must show that it has suffered some injury by reason of departure from the strict terms of the contract, before it can for that reason be discharged from its liability. Atlantic Trust Co. v. Laurinburg (C. C. A. 4th) 163 F. 690, 90 C. C. A. 274; Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 S. Ct. 142, 48 L. Ed. 242; [United States for Use of] Hill v. American Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437; Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; National Sure-

ty Co. v. Lincoln County (C. C. A. 9th) 238 F. 705, 151 C. C. A. 555; American Bonding Co. v. U. S. to Use of Francini (C. C. A. 3d) 233 F. 364, 147 C. C. A. 300; note in 12 A. L. R. 382, and cases cited. And payments to a contractor in advance of the time specified in the contract are expressly held not to be such a departure from or change in the terms of the contract as will discharge from liability a bonding company which has guaranteed its performance, in the absence of a showing that the bonding company has suffered injury therefrom. Atlantic Trust Co. v. Laurinburg, supra; National Surety Co. v. Lincoln County, supra; American Bonding Co. v. U. S. to Use of Francini, supra."

It is contended on behalf of the appellant that the findings of the special master should not be disturbed, as "his conclusions have every reasonable presumption in their favor, and are not to be set aside or modified unless there clearly appears to have been error or mistake on his part." Camden v. Stuart, 144 U. S. 104, 12 S. Ct. 585, 590, 36 L. Ed. 363. We do not think this case binding here, because it seems clear to us that the findings of the master were clearly mistaken.

With regard to the claim of appellee Feller, we think the action of the judge below was correct, under authority of Maryland Casualty Co. v. Ohio River Gravel Co. (C. C. A.) 20 F.(2d) 514. There was no unreasonable or unusual extension of time by the contractor to Feller, and the surety was in no way damaged by the extension.

The decree of the court below is accordingly affirmed.

## On Rehearing.

PER CURIAM.

We think that the principles laid down in our former opinion are correct, but that their application to the facts of the case shows a balance of $4,814.85 due the surety company from the county court. The company is entitled to payment on the basis of the contract. The county court is entitled to credit against the contract price, not the amount actually paid the contractors, but the amount which under the contract it should have paid them after deducting the percentage of current estimates which it was required to retain for the protection of the surety as well as for its own protection. When the surety completed the work it was entitled to this retained percentage to the extent necessary to indemnify it for its losses under the contract. National Surety Co. v.

County Board of Education (C. C. A. 4th) 15 F.(2d) 993.

After the correction of mistakes, the amount of the contract price for the entire work, including that done by the surety as well as that done by the contractors, was $90,483.16. The amount of the estimates upon the basis of which payments were made to the contractors before the surety took over the contract was $95,187.01. The county court should have retained on these estimates $9,518.70; and the amount of the payments which it should have made to the contractors and for which it was entitled to credit as against the surety was therefore $85,668.31. This leaves a balance due the surety under the contract of $4,814.85.

A question is raised as to whether the right of the surety company to recover this balance was asserted in the court below. We think, however, that the contention of the company as to its right to recover the percentage required by the contract to be retained sufficiently raised the question and that the point was preserved by the assignments of error relating to the action of the court with regard to this matter.

The decree below will accordingly be modified by allowing the surety company a recovery against the county court of $4,814.85 with interest from the date of final settlement. The costs on the appeal to this court will be divided.