# Fluck *et al.*, Administrators, *versus* Hager, to use.

1. Nace, by assignment, became the owner of a mortgage against Spink, and afterwards assigned it and guaranteed it. After a number of assignments, it was assigned to Nace's administrators, who assigned it to Schonley, "*with all the rights*, remedies, incidents, &c., thereunto belonging." *Held*, that the original covenant of guaranty by Nace, having passed into his estate, was extinguished, and no recovery could be had by the assignee of his administrators against his estate.

2. The guaranty being extinguished, the administrators could not revive it against the estate; if they had undertaken to do so, the obligation would have been their own.

3. The assignment of the mortgage having been to the administrators of Nace, and not to them personally, the presumption is that the consideration was paid by the estate.

ERROR to the Court of Common Pleas of *Bucks county*.

This was an amicable action of covenant, in which there was a case stated, between Samuel M. Hager, to the use of Charles Schonley, plaintiff, and Tobias Fluck and Jacob Delp, administrators, &c., of Charles Z. Nace, deceased.

On the 30th of December 1856, William Spink gave a mortgage to Hager, to secure a bond recited in it. On the 1st of January 1857, Hager assigned the mortgage to Nace. On the 12th of January 1859, Nace assigned the mortgage to Hager, with the covenant, on which this suit is brought, viz., " and in case the same cannot be recovered of the said William Spink, his heirs, executors, administrators or assigns, then I do promise and agree to pay the amount thereof, or so much as cannot be reco-

vered, to the said Samuel M. Hager, his executors, administrators or assigns, together with all charges thereon."

On the 6th of April 1859, Hager assigned the mortgage to Charles E. Dubois, his heirs, &c., and agreed "in case the same cannot be recovered of the said mortgagor, or Charles Z. Nace, the assignor of the said mortgage to the said Samuel M. Hager, then I do promise and agree to pay the amount thereof, or so much as cannot be recovered, to the said Charles E. Dubois, his executors, administrators and assigns, together with all charges thereon."

On the 15th of August 1860, Dubois, assignee, &c., issued a *scire facias* on the mortgage against Spink, and September 22d 1860, judgment was entered in the same for $2876.53.

On the 1st of July 1863, Dubois transferred the mortgage to Fluck and Delp, administrators, &c., of Nace, without any express guaranty, and on December 1863, Fluck and Delp, administrators aforesaid, assigned to Schonley, the assignment being in part as follows: "have granted, bargained, sold, assigned, transferred and set over, and by these presents do grant, bargain, sell, assign, transfer and set over unto the said Charles Schonley, his heirs, executors, administrators and assigns, the said hereunto annexed indenture of mortgage, which is given and executed by William Spink, dated the thirtieth day of December 1856, and recorded in the office for Recording Deeds, &c., and all the hereditaments and premises in and by the said hereunto annexed indenture of mortgage, particularly described and granted: together with all rights, remedies, incidents and appurtenances whatsoever thereunto belonging, or in anywise appertaining, and all our estate, right, title, interest, property, claim and demand whatsoever, of, in and to the same;" to hold, &c.

On the 13th of February 1864, the judgment was marked to the use of the administrators. On the 19th of February, the land was sold under a *levari* issued by Schonley, assignee, &c., for $100, leaving 33 cents to be paid on the mortgage after deducting costs, &c. On 22d of November 1864, a judgment was entered against Spink on the bond secured by the mortgage, and execution was issued, to which the return was *nulla bona*. Spink was insolvent. Nace's personal estate, after payment of debts, was $6838.52; his real estate taken by his heirs was more than enough to pay the mortgage and interest.

The question submitted by the case was, whether the plaintiff could recover against the administrators of Nace on the covenant contained in Nace's assignment to Hager of January 12th 1859.

The court below entered judgment for the plaintiff for $3614 with costs, Chapman, P. J., delivering the following opinion:—

"The question in this case is whether the estate of Charles Z. Nace is liable under his guaranty. The mortgage and bond were

[Fluck *v.* Hager.]

originally given by Spink to Hager, who assigned them to Nace. They were afterwards re-assigned by Nace to Hager, when Nace guaranteed payment. Hager then assigned them to C. E. Dubois, Esq., and guaranteed payment on failure of both Spink and Hager to pay. Mr. Dubois re-assigned to Hager, who assigned to Nace's administrators, who assigned to plaintiff.

"It is held in Reed *v.* Garvin, 12 S. & R. 100, that a guaranty given by the assignor of a bond runs with it into whose hands soever it may come. This rule would be conclusive in favour of the plaintiff, were it not that the representatives of Nace became the owners of the mortgage, and consequently of the guaranty which was accessory of it. Was the liability of Nace's estate extinguished by this operation, or only suspended? The mortgage was not paid. Its acquisition was by purchase. There was no satisfaction of the principal debt, nor was it intended there should be. The case seems to stand nearly on the same footing as when the surety in a bond takes it by assignment and afterwards transfers it to a third person. While he holds the bond his own liability is suspended, but if he parts with the bond, his liability becomes fully revived. The only difference is, in one case the surety is a party in the principal obligation; in the other, he is bound by a covenant collateral to it. But unless the principal debt be paid, or the guarantor be released by some act of the holder of the security amounting to an equitable defence, which is not alleged in the case stated, it is not perceived why the covenant does not still hold, especially as the breach did not occur until after the assignment by the administrators. The only ground, then, upon which the defendants can claim to stand, is, that the covenant was extinguished by operation of law. But if this were so, the same result must take place when the surety is bound by the principal obligation, which cannot be pretended.

"Further, while it is not urged that the administrators could bind the estate of their decedent, by a covenant with their assignee, the terms of their assignment to Schonley may be referred to as explanatory of the conditions upon which they took the mortgage from Hager. By these, the idea of payment, satisfaction, extinguishment or release is negatived, for there is no exception in the assignment of the mortgage. It includes 'all rights, remedies, incidents and appurtenances thereunto belonging.' The mortgage, therefore, seems to have passed into the hands of Schonley as it had been delivered by Hager. All Hager's rights were transferred to the administrators and their assignees, and Schonley became their assignee. Schonley had recourse to Hager's name as the legal party. Hager had given his guaranty to Mr. Dubois, but by it the former's responsibility does not arise until after that of Nace, and hence Hager was exempted from liability to him, and there can be no question to the use of Hager's name as plaintiff."

[Fluck *v.* Hager.]

The entering judgment for the plaintiff was assigned for error.

*H. P. Ross* and *G. M. Wharton*, for plaintiffs in error.—This obligation differs from that of a surety in a bond; the contract of a surety is absolute and executed: the covenant here is collateral and the liability contingent. Besides, here the guarantor was dead; his assets bought the obligation; it was thus vested in his estate and extinguished. The administrators could not make the estate liable by a new guaranty. Where the holder of an encumbrance acquires title to the land encumbered, the encumbrance is merged: Dougherty *v.* Jack, 5 Watts 456; Helmbold *v.* Man, 4 Wh. 410; except where there is a contrary intention or where it is to the benefit of the party to keep it alive: 8 Watts 148; 1 W. & S. 487; 9 Barr 332. The rule extends to covenants running with the land: Fisher *v.* Lewis, 3 P. L. J. 81. The administrators could not bind the estate: Grier *v.* Huston, 8 S. & R. 402; Beeson *v.* McNabb, 2 Barr 420; 10 Mod. 316; 1 Dallas 347 n. If this mortgage had been taken by one of Nace's distributees as part of his share, he could not have proceeded against the estate on non-payment by the mortgagor: Platt on Covenants 585. If the administrators had power thus to create liabilities against the estate, they might prolong its settlement indefinitely.

*G. Lear*, for defendant in error.—The assignment would have carried the guaranty of itself: but here, all its " *rights, remedies and incidents*" were expressly assigned with it. The meaning of the contract must be found in the words of the instrument: Campbell *v.* Baker, 10 Wright 243. The guarantor in this case would not be liable on the insolvency merely of the mortgagor, but must resort to the land. It was never ascertained, therefore, that there was a liability till after Nace's death. And if a right to sue did not exist till after Nace's death, there could be no merger: no right of action existed at the assignment to Schonley. Merger is where estates of higher and inferior degrees meet, or where the particular estate and reversion meet in the same person: 4 Kent's Com. 100. In encumbrances it depends upon intention. Here there was not a conjunction of the whole of two interests in one person, or in the same right, which is indispensable for a merger: Wallace *v.* Blair, 1 Grant 75; Dougherty *v.* Jack, 5 Watts 456. Hager's guaranty was transferred, and it was not extinguished. Hager's liability only arose finally on Nace's inability to pay. Can the administrators cast the liability on Hager by refusing to pay out of Nace's estate? Hager is the legal plaintiff; his rights attached before the assignment to the administrators. If Schonley cannot recover from Nace's estate, Hager is liable. The assignment was made to defendants as administrators: they had no

[Fluck *v.* Hager.]

right to bind the estate to others, nor others to the estate: describing them as administrators was surplusage. They acted for themselves as individuals: Grier *v.* Huston, 8 S. & R. 401; Beeson *v.* McNabb, 2 Barr 424; 10 Mod. 316; Solliday *v.* Bissey, 2 Jones 347; Seip *v.* Drach, 2 Harris 357. Fluck and Delp under this view are strangers to the covenant and acting in a personal affair. The assignment of the principal obligation carries with it the guaranty: Reed *v.* Garvin, 12 S. & R. 100.

The opinion of the court was delivered, February 8th 1866, by Thompson, J.—The question submitted for adjudication in the court below was distinctly stated to be, whether the plaintiffs can recover in the action of covenant, on the covenants of Charles Z. Nace with Samuel Hager, of the 12th January 1859, the same not having been recoverable from William Spink since the date of said assignment. It is therefore an action on the covenant and undertaking of the decedent in his lifetime, and not upon that of the administrator personally, and this is important to be borne in mind in this case. The covenant of the intestate Nace, now sued upon, was a guarantee to Hager, his assignee of the mortgage, against Spink, of a recovery of the mortgage-money. No doubt the property pledged was an insufficient security for the money, and it is admitted that the mortgagee was at the time insolvent, so that nothing could be recovered from the land, hence the guarantee required and given. After this, Hager transferred the mortgage to Dubois, and guaranteed a recovery of the money from Spink or Nace, his assignee. Dubois recovered judgment against Spink on the mortgage in 1860, but not the money, and on the 1st of July 1863 he transferred the mortgage and bond to Fluck and Delp, the administrators of Charles Z. Nace, deceased, without any guaranty to pay in case of failure to recover from Spink, and the judgment obtained was marked to the same use. Thus we trace into the hands of Nace's administrators his covenant of guaranty, on which he was liable by reason of the admitted insolvency of Spink, and the known insufficiency of the estate pledged, for it was afterwards sold at sheriff's sale for $100. That it was known to be insufficient may be inferred from the guarantees as well as the sale.

As the assignment of Dubois was to the administrators of Nace, and not to them personally, we must infer, in the absence of proof to the contrary, that the consideration was paid by the estate. The presumption accords best with the nature of the duty resting on the administrators.

The result of all this is that the obligation of the decedent being vested in his personal representatives for the benefit of the estate, it ceased to be an obligation against the estate in their hands. It was extinguished; and while it remained so was satisfied

[Fluck *v.* Hager.]

in law. The mortgage to which it was attached, by the transaction, became the property of the estate, and it cannot be pretended, while it so belonged, that the guaranty was in force. That would be like one guaranteeing an obligation belonging to himself. It was a species of merger, but more properly an extinguishment. Being extinguished, was it revived by the transfer of the administrators? That could not be. They had no authority to create or incur such an obligation against the estate. If they undertook to do so, the obligation would be · their own and not that of the decedent: 8 S. & R. 403; 10 Mod. 316; 3 Bac. M. 94, tit. *Executors and Administrators* (4 vol., Bouvier's ed., p. 120); 1 Dall. 347, in note. But it is the obligation of the decedent that is sued on, and thus on plain principles the case fails. I do not mean to say that in equity a lien or judgment, might not be kept intact against an estate after a purchase of it by executors or administrators, where it would manifestly subserve the interest of the estate. Possibly it might be so: but it never could be so to its prejudice.

Mr. Schonley dealt with the administrators as such, and was bound to know the legal scope of their powers. They were but the agents of the law for a special purpose, and he could not have been misled by their act. The assignment of the mortgage was all right, and if the administrators had entered into a guarantee for its collection, it would have been their own personal contract, upon which they might have been made responsible as already said. Indeed their assignment contains nothing, in my opinion, like a guarantee by themselves or for the estate. They assign the mortgage, " together with all rights, remedies, incidents and appurtenances, whatsoever thereunto belonging or in anywise appertaining, and all our estate, right, title, interest, property, claim and demand whatsoever of, in and to, the same, to hold," &c. There is nothing in these terms to revive an extinct liability or create a new one. No doubt, had they stood in the relation of strangers to the estate, such a transfer would have passed the collateral covenant of guaranty, for then it would have been in full force and vigour. Not so as the case stands. It was extinct, and what the administrators said in the instrument of transfer did not revive it. We think the court below erred in entering judgment for the plaintiff below, and that it must be reversed and judgment entered the other way.

> And now, to wit, February 7th 1866, the judgment of the Court of Common Pleas entered in this case is reversed, and judgment in favour of the defendant on the case stated with costs.

Per Curiam.

STRONG, J., dissented.

WOODWARD, C. J., was absent.