## BALTIMORE TRUST CO. v. METROPOLITAN CASUALTY INS. CO. OF NEW YORK.

District Court, D. Maryland.
April 29, 1933.

G. Ridgely Sappington, of Baltimore, Md., for plaintiff.

Arthur W. Machen, Jr., and John Henry Lewin (of Armstrong, Machen & Allen), both of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The demurrer to the declaration in this case presents the important, and apparently new, question of law, whether a surety bond given by a mortgage bond company to a trustee for its bondholders to guarantee to the trustee the payment of the amount of a particular mortgage, is assignable by the trustee to the purchaser of the mortgage where the latter is withdrawn from the trust by the mortgage company prior to any default by the mortgage company.

In the particular case the mortgage company was the First National Company, a Delaware corporation; the trustee was the Baltimore Trust Company, a Maryland corporation; the surety company executing the bond was the Metropolitan Casualty Insurance Company of New York, and the assignee of the trustee is the latter company in its own individual right and not as trustee.

The suit is by the Baltimore Trust Company in its individual capacity as plaintiff, as

assignee of the bond, against the Metropolitan Casualty Insurance Company of New York as defendant. It was stated by counsel that the declaration as drawn presents the final and ultimate facts of the case so that the ruling on the demurrer necessarily involves substantially a decision of the legal merits of the case as a whole. The case as presented by the declaration is as follows:

The First National Company executed its trust indenture to the Baltimore Trust Company as trustee, under date of January 15, 1928, to secure a proposed issue of its own bonds in an amount not exceeding $10,000,-000 par value. As security for these bonds it transferred, or agreed to transfer and keep on deposit with the trustee, securities equal to the face value of bonds at any time outstanding, which securities might consist of (a) mortgage obligations of third persons or corporations, (b) cash, or (c) government bonds. It was further provided that mortgage obligations to constitute acceptable security must be accompanied by (1) a schedule giving important data regarding the mortgage; (2) a title policy; (3) a fire policy; (4) a certificate of appraisal of the value of the mortgaged property; and (5) "a surety bond of a surety company guaranteeing to the Trustee with or without designation of trusteeship, as holder of said mortgage, the payment of principal and interest thereon. The surety bond shall be in the form and terms substantially as follows."

The form of the bond is then set out. Beginning in the usual form of a surety bond, it recites that the First National Company as principal, and the Metropolitan Casualty Insurance Company of New York as surety, "are held and firmly bound unto The Baltimore Trust Company, a corporation duly incorporated under the laws of the State of Maryland (hereinafter called the 'Obligee') as Trustee, its successors and assigns."

The condition of the bond is as follows:

"Now, Therefore, the condition of the above obligation is such that if the above bounden Principal shall pay or cause to be paid to the Obligee the amount secured by each of such mortgages, with interest thereon when and as due, then this obligation shall be void, otherwise of full force and effect.

"Provided, however, and upon the following express conditions, which shall be conditions precedent to recovery hereunder: (a) In the event of default under any mortgage as aforesaid, either the Principal of Surety shall, within" (18) "months after demand by the Obligee, pay to the Obligee, the mortgage debt secured thereby, or the balance due on account thereof, and shall, in the meanwhile, pay interest on said mortgage debt as it accrues. Upon payment by the Surety of said mortgage debt or the balance due on account thereof, with interest, as aforesaid, the Obligee shall assign to the Surety said mortgage, together with the obligation or obligations secured thereby."

The bond sued on in this case (in the amount of $86,480) is copied in the declaration and conforms exactly to the above-recited form of surety bond provided for in the trust indenture. The particular mortgage which is described in the bond sued on, was a mortgage executed July 24, 1926, by Scheuer-James Corporation, of Atlantic City, N. J., to the First National Company, to secure the original indebtedness of $150,000 payable three years from date, covering unimproved property in Atlantic City. The balance of principal remaining due under this mortgage as of March 31, 1928, was $86,480, and the mortgage was assigned to the Baltimore Trust Company as trustee under the trust indenture on or about April 24, 1928, the date of execution of the surety bond. This mortgage so assigned to the trustee was held by it as a part of the trust property under the indenture until January 15, 1929, when it was "withdrawn" by the First National Company from the trustee (in accordance with a permissible provision in the trust indenture) and then assigned by the First National Company to the Baltimore Trust Company in its individual capacity as security for indebtedness of the First National Company to the Baltimore Trust Company entirely separate and apart from the trust relation. At the same time the surety bond was also assigned by the Baltimore Trust Company as trustee to the Baltimore Trust Company in its individual right pursuant to express written instructions to that effect given by the First National Company. At that time there was no existing default in the payment of bonds secured by the trust indenture or other covenant thereof. No notice of the withdrawal of the mortgage or the assignment of the surety bond was given to the surety company until default by the mortgagor in payment of the balance due under the mortgage at its maturity on July 24, 1929, and the surety company never consented to the continuance of its obligation (if its consent was necessary) after the assignment, and denied liability on its surety bond when demand was made upon it for payment. The First National Company first made default in the payment of its own bonds on January 15,

1930, and some time thereafter was placed in receivership. It was unable to pay the amount of the mortgage when called upon by the plaintiff to do so.

The circumstances out of which the assignment of the mortgage and surety bond arose are recited in the declaration. On January 15, 1929, bonds of the First National Company secured by the indenture were maturing to the amount of $484,500. The Baltimore Trust Company in its individual capacity held as pledgee securities of the First National Company free of the trust consisting of certain North East Second Avenue bonds of the principal amount of $76,500. The First National Company requested the Baltimore Trust Company to sell this collateral and to pay over to itself as trustee the net proceeds thereof, agreeing at the same time to substitute as collateral for the private debt the particular mortgage of the Scheuer-James Corporation which would be withdrawn from the trust estate in accordance with its terms. This was done and the net proceeds of the North East Second Avenue bonds in the amount of $69,264.32 were paid into the trust estate and the First National Company at the same time delivered to the trustee the additional amount of $415,235.68, making up the total amount of $484,500, thus supplied to the trustee for the satisfaction of the maturing bonds. The written request of the First National Company delivered to the trust company at the time, said: "Now, therefore, you are authorized and instructed to *release* the said mortgage and all accompanying bonds, policies of insurance and other collateral papers, free, clear and *discharged from the lien of any trust* and to hold the same as and for the property of the said The Baltimore Trust Company in its own right and * * * in particular to assign to The Baltimore Trust Company in its own right, all the rights of the said The Baltimore Trust Company as Trustee under a certain surety bond" (the bond sued on in this case). (Italics supplied.)

Contemporaneously an assignment of the surety bond was made in writing by the Baltimore Trust Company as Trustee to its own self in its own right. The mortgage itself was also seemingly assigned to the trust company. Both the mortgagor and the First National Company have defaulted in the payment of the balance of the mortgage indebtedness and the surety company denies its liability under the bond on the ground that as the mortgage had been withdrawn from the trust and was no longer held as a part of the trust estate, there was no further obligation under the bond on the Surety, or, in other words, that the Baltimore Trust Company in its own right as assignee of the bond cannot enforce the surety's obligation; or, in still other words, the contention is that the bond is not assignable except to a successor trustee. And attention is called particularly to the wording of the condition of the bond which was to pay to the "Obligee" (only), previously defined in the bond as "The Baltimore Trust Company as Trustee." On the other hand, the plaintiff relies on the general assignability of the bond, calling attention to the obligation as running to the "Trustee, its successors and assigns," in the first paragraph of the bond which states the obligation.

The trust indenture is filed as an exhibit with the declaration. In addition to its provisions already referred to it shows that the Metropolitan Casualty Insurance Company of New York was the surety company primarily selected to execute the surety bonds referred to; and it is a reasonable presumption therefrom that the surety, as well of course as the trustee, was fully cognizant of the plan and provisions of the trust indenture particularly in relation to the intended scope and effect of the surety bond. It is also to be noted that, in addition to direct mortgages, the First National Company could deposit with the trustee mortgage bonds of other corporations provided they were also accompanied by (1) a schedule of the important features of the particular bond issue; (2) an appraisal certificate of the value of the property securing the bond issue; and (3) a guaranty of the payment of principal and interest of said bonds, which might be (a) a surety bond similar to the one sued on or (b) a direct guaranty of the bonds indorsed thereon by a surety company, or (c) satisfactory evidence that payment of principal and interest of said bonds was guaranteed to the *trustee under the mortgage or deed of trust securing the bonds,* by a surety bond in substantially the form of the one here sued on. These alternative conditions with regard to the surety bond indicate that the parties had in mind the distinction between a surety bond which by indorsement on a mortgage or bond guaranteed its payment *to the holder,* and a surety bond which guaranteed payment of a bond or mortgage to the *trustee* under the particular indenture. The importance of this will be more apparent hereafter. See article II, section 1 (page 16 of the trust indenture).

Section 3 of article II of the indenture provided in substance that until default by the First National Company it could *withdraw* from the trustee any deposited securities in excess of the amount required to be retained in relation to the amount of outstanding bonds of the First National Company, and likewise the company was permitted to withdraw securities on substituting others which would meet the requirements of the indenture. And section 4 provided that the trustee could require the company to withdraw any securities which were themselves in default and such defaulted securities thereafter should not be included in computing the amount of securities required to be kept on deposit with the trustee. Section 5 provided that moneys received by the trustee as proceeds from any kind of insurance should be held by the trustee as part of the trust property with leave, however, to the company to withdraw any security in excess of the amount required in relation to the outstanding bonds.

Article V (printed page 24 of the trust indenture), and particularly section 3, provided for the remedies of the trustee upon default by the company, including particularly the power to sell "the securities and all interest, claim and demand therein, and the right of redemption thereof in one lot as an entirety or in separate lots as the Trustee shall deem best."

In section 5 the trustee is empowered to execute to the purchaser proper assignments and transfers of the property sold but without express reference to the policies of insurance and the surety bond deposited with the trustee in connection with the mortgages or mortgage bonds held as security. Provision is also made in the indenture in article VII, section 20, for the appointment of a *successor* trustee on certain contingencies, and assignment to it by the original trustee of all rights and interest under the indenture.

██ The question presented, whether the bond was assignable to, and may be enforced against the surety by, the plaintiff in this case must be determined from the whole wording of the bond, with the help of such further light as may be obtained from the existing situation known to the parties at the time of its execution; that is, in relation to the subject-matter concerning which they were contracting. The case is seemingly one of first impression. While mortgage bond companies operating under substantially similar plans have been numerous in the last few years, the industry of counsel has not produced any judicial decision applicable to the particular situation. Nor is there any established practice or trade usage or custom with respect to the subject-matter that would be of any help in determining this question, so far as counsel and the court are aware. This is probably due to the fact that this particular type of business is comparatively recent. In approaching the question (one of construction of a written instrument), we pass on the way some well-posted general directions. The bond is executed by an incorporated surety company and the applicable rule of construction is to treat it as an insurance contract and interpret its provisions, where doubtful or ambiguous, most strongly in favor of the parties protected thereby. The strictissimi juris rule of law as to sureties is not to be applied to bonds of this character. Maryland Casualty Co. v. Fowler (C. C. A. 4) 31 F.(2d) 881, 63 A. L. R. 1375. And, "most rights under contracts are assignable. 2 R. C. L. 598. The exception is where rights are coupled with liabilities, with contracts for personal services or with contracts involving personal confidence." Central Union Bank v. New York Underwriters' Ins. Co. (C. C. A. 4) 52 F.(2d) 823, 824, 78 A. L. R. 494.

██ But these signposts are lacking in particularity for the proper legal destination here. The most reliable guide in any construction of a written instrument, with or without the aid of collateral circumstances, is to ascertain the true intention of the parties. The presence of the phrase "its successors and assigns" in the obligatory part of the bond is certainly an indication of its assignability to some extent but it is not conclusive as to the particular extent here involved. This must be determined from a consideration of the whole of the bond in connection with the trust indenture. See Williston on Contracts, vol. 1, § 423, where it is said: "Notwithstanding the use of such words, however, the intention of the parties must be gathered from a consideration of all the terms and of the entire tenor of the contract, construed in the light of surrounding circumstances, and taking everything into consideration it may appear that an assignment was not to be permitted without the assent of the other contracting party." See also 50 C. J. 76, 77, title "Principal and Surety," where it is said: "The suretyship contract of either a gratuitous or a paid surety must receive a just and reasonable interpretation, the intent of the parties, as gathered from the language of the instrument in the light of surrounding

facts and circumstances, controlling. When such intention is once ascertained it will prevail over all other considerations in determining the nature of the agreement." This general rule has been applied in U. S. F. & G. Co. v. Board of Com'rs of Woodson County, 145 F. 144, 148 (C. C. A. 8), and Southern Surety Co. v. Greeneville, 261 F. 929 (C. C. A. 6).

■ The important question is this: Was the surety bond one which ran along with the mortgage and in legal effect was to be similar to a guaranty thereof directly indorsed thereon, thus inuring to any subsequent holder of the mortgage, or was it intended to be limited, in the scope of its assurance, to the trustee and its successors and assigns in the trust? After giving due weight to all the circumstances, I reach the conclusion that the intention of the parties was to so limit the scope of its coverage.

As heretofore pointed out, the parties had their attention expressly directed to different forms of security for mortgages or mortgage bonds and particularly to the distinction between a direct guaranty indorsed on a particular mortgage or bond (which would run to the assignee or holder) and to a form of bond which would protect the holder of the bonds under a particular trust only through payment to the trustee. The effect of the contention of the plaintiff in this case is to obliterate this distinction and to impress the surety bond sued on with characteristics substantially the same as a direct guaranty indorsed upon the mortgage. If this had been the intended effect it would have been much simpler to have provided the appropriate form therefor; and as the parties definitely had in contemplation the two different forms of obligations, it must be presumed that the choice they adopted was deliberate and intentional. •

The most impressive consideration in support of the view above adopted is that reading the bond in the light of the trust indenture (and it is not disputed that it should be so read) the whole plan and purpose is seen to be to keep on deposit with the trustee securities at all times equal in value to the aggregate par value of outstanding bonds. To the extent that the securities so held by the trustee consisted of cash and government bonds, it is fairly obvious that no further security would be needed, but mortgages were subject to impairment of value by various dangers, including defective titles, fires and insolvency of mortgagors. As against these hazards which might imperil the sufficiency

of the security held by the trustee, the deposit of title and fire policies and the surety bond to indemnify against insolvency of the mortgagor were required. All of these provisions were definitely intended to insure the sufficiency of the mortgage security to pay the outstanding bonds. The parties were not interested in, and I think did not contemplate, a situation unrelated to the protection of the bondholders. It is clear also that the particular mortgage protected by the surety bond was withdrawn from the trust and ceased to be of any value or interest to the trustee or bondholders as such. On its assignment to the trustee as a banker in its individual capacity it disappeared completely out of the trust picture. I cannot resist the conclusion that this was a situation entirely beyond the contemplation of the parties in the formation and execution of the plan of the trust indenture including therein the surety bond.

■ With this understanding of the intention of the parties as expressed in the bond and indenture, it is apparent that the force of the word "assigns" as contained in the obligatory clause of the bond, is spent before reaching to the extent claimed by the plaintiff. Indeed the defendant contends that there must be supplied by necessary implication after the words "successors and assigns" the phrase "in the trust," thus limiting the scope of the assignability to a successor trustee and not including even an assignment of the bond to a purchaser of the mortgages to which the bonds relate upon a sale by the trustee, under the provision in the indenture, after default by the First National Company. The defendant supports this contention by the considerations that the condition of the bond is not applicable to a situation where the mortgage has been sold by the trustee, and the trust indenture does not specifically provide for an assignment of the bond in such case, and, perhaps more importantly, that the nature of the transaction is such that the ultimate security for the bondholders was, as a practical matter, intended to be reliance upon the solvency of the surety company and, therefore, a sale of the mortgages by the trustee, although nominally provided for in the indenture, was not practically within contemplation. It is, however, unnecessary to decide this point in this case because it clearly appears that the particular mortgage was in fact *withdrawn* from the trust before default by the First National Company, and was not sold by the Trustee, and indeed could not have been sold by the trustee, under the conditions then existing.

Other considerations, more technical in character, but not lacking in legal substance, lead to the same conclusion, that the demurrer must be sustained.

Thus it is said, correctly I think, by defendant's counsel, that the legal effect of the transaction was a payment by the First National Company to the trustee of the amount of the mortgage when it was withdrawn from the trust, and that this constituted a compliance with the condition of the bond which discharged the obligation of the First National Company and also of the surety; and that the bond thus in legal effect having been returned to the First National Company, its obligation as well as that of the surety was thus extinguished. See Fluck v. Hager, 51 Pa. 459, 91 Am. Dec. 132; Brandt on Suretyship, § 3667. It is to be noted that the bond is not that of the mortgagor but of the First National Company as principal, and the primary obligation of the bond as expressed in its condition is that the principal "shall pay or cause to be paid to the obligee" (the trustee) "the amount secured" by the mortgage. Under the conditions existing at the time the transaction took place, the First National Company had the right to withdraw the mortgage from the trust upon paying to the trustee an amount in cash equivalent to the principal of the mortgage, and it appears from the declaration that this was done. It is true that the transaction took the form of a direct assignment of the mortgage and bond from the trustee to itself in its own right but the matter must be viewed as to its legal effect as having been performed in accordance with, and not in defiance of, the terms of the trust indenture. And indeed the instructions from the First National Company to the trustee recited that the mortgage and bond were to be released and discharged from the trust. The plaintiff, therefore, cannot obtain any greater rights by the assignment to it than it could have obtained if the formalities contemplated and provided for in the indenture had been fully complied with. The condition of the bond having been performed when payment was made by the First National Company to the trustee, and the bond having been legally extinguished by its return to the First National Company in legal effect, it could not thereafter be revived by an assignment or redelivery by the First National Company, at least so far as the obligation of the surety is concerned.

It is also not unimportant to remember that the condition of the bond is the measure of the obligation. Here the condition was to pay to the obligee (as trustee). The effect of the assignment, if valid, would be to change the obligee; and, "in general, a surety is discharged by a change of the obligee without his consent." 50 C. J. 97. It is not sufficient to say to the surety that the amount of his obligation in this case is not increased by the change in the obligee. The mortgage was held by the trustee as a part of the whole trust securities. If the mortgage had continued in the trust, it is at least possible that upon default of the mortgagor there might still have been an excess of collateral as security for the bondholders which would have excused the First National Company from paying the amount of the mortgage in whole or in part. In the last analysis the bond was taken for the benefit of the holders of the bonds of the First National Company covered by the indenture and if they had been otherwise satisfied there would have been no claim by the trustee on the particular surety bond. But the assignment of the mortgage removed it from the trust and if the assignment of the surety bond was valid, it fixed upon the surety an obligation separate and apart from the trust, and deprived the surety of any rights of subrogation or exoneration that might have flowed to it from the continuance of the trust. It is true, of course, that the principal in the bond has not paid to the trustee the amount of the mortgage, but it is equally clear that as the mortgage was withdrawn from the trust the interest of the trustee both in it and the accompanying bond, has ceased, and there could be no recovery upon the bond by the trustee because it has sustained no loss and damage; and similarly even if the bond is regarded as technically assignable the plaintiff has sustained no damage by a breach of a condition to pay *to the trustee*.

For these reasons I reach the conclusion that the defendant's demurrer to the declaration must be sustained and it is so ordered.