## BALTIMORE TRUST CO. v. METROPOLITAN CASUALTY INS. CO. OF NEW YORK.

### No. 3547.

Circuit Court of Appeals, Fourth Circuit.

Jan. 4, 1934.

G. Ridgely Sappington and Daniel Heyward Hamilton, Jr., both of Baltimore, Md., for appellant.

Arthur W. Machen, Jr., and John Henry Lewin, both of Baltimore, Md. (Armstrong, Machen & Allen, of Baltimore, Md., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The Baltimore Trust Company, as the assignee in its own right of a mortgage and a surety bond, given to insure the payment thereof, brought an action at law in the District Court against the Metropolitan Casualty Insurance Company of New York, as surety on the bond, alleging that there had been a default in the payment of the mortgage which the casualty company was obligated to make good. A demurrer to the declaration was sustained by the District Court, and judgment was given for the defendant therein. According to the allegations of the declaration, the surety bond, in the sum of $86,840, had been delivered by the First National Company, a Delaware corporation, as principal, and the Metropolitan Casualty Insurance Company of New York, as surety, to the Baltimore Trust Company, as trustee under a deed of trust of January 15, 1928. This deed of trust was given by the First National Company to the Baltimore Trust Company, as trustee, to secure an issue of mortgage bonds; and simultaneously therewith, the First National Company assigned to the trustee, as collateral security, certain mortgages and other securities, and certain surety bonds issued to secure the payment of the principal and interest of the mortgages assigned, including the surety bond sued on in this case and the mortgage thereby secured. That mortgage was made on July 24, 1926, by Scheuer-James Corporation to the First National Company to secure the sum of $150,000, payable at any time within three years from date, with interest; and on April 24, 1928, when the surety bond was executed, the balance of the principal sum remaining unpaid upon the mortgage was $86,480.

The condition of the bond was as follows:

"Now, Therefore, the condition of the above obligation is such that if the above bounden principal shall pay, or cause to be paid to the obligee, the amounts secured by each of said mortgages, with interest thereon, when and as due, then this obligation shall be void, otherwise of full force and effect.

"Provided, however, and upon the following express conditions, which shall be conditions precedent to recovery hereunder.

"(a) In the event of a default under any mortgage as aforesaid, either the principal or the surety shall, within eighteen (18) months after demand by the obligee, pay to the obligee, the mortgage debt secured thereby, or

the balance due on account thereof, and shall, in the meanwhile, pay interest on said mortgage debt as it accrues. Upon payment by the surety of said mortgage debt or the balance due on account thereof with interest, as aforesaid, the obligee shall assign to the surety said mortgage, together with the obligation or obligations secured thereby."

It will have been noticed that the pending suit was brought by the Baltimore Trust Company in its own right. It came into possession of the mortgage and the surety bond in its capacity as a bank, under circumstances now to be recorded, and for the sake of clarity, it will be hereinafter referred to as the "bank," when reference is made to its activities in its own right, and as the "trustee" when mentioned in the relation assumed by it under the trust indenture. Mortgage bonds of the First National Company, in the amount of $484,500, secured by the trust indenture, matured on January 15, 1929; and the company, in order to make up this sum, desired to sell certain of its securities of the face value of $76,500, which it had pledged with the bank as security for a loan. It was therefore agreed between them that the bank should sell the securities and accept in place thereof, the Scheuer-James mortgage, to be withdrawn from the trust estate in accordance with the terms of the trust indenture. The securities were sold by the bank for $69,264.32. The First National Company added the sum of $415,235.68, and the total of $484,500, was supplied to the trustee in satisfaction of the maturing bonds.

We are concerned especially with the details of the transaction through which the Scheuer-James mortgage and the surety bond were withdrawn from the trust estate and delivered to the bank. On January 15, 1929, there was no default under the terms of the Scheuer-James mortgage, or under the terms of the deed of trust or the mortgage bonds secured thereby, and the First National Company was entitled to withdraw some of the securities from the trust estate, because it had paid the maturing bonds. The withdrawal of the mortgage and the surety bond above mentioned were therefore accomplished in conformity with article 2, section 3, of the trust indenture, which is as follows:

"Until some default shall have been made in the due and punctual payment of the interest or of the principal of the bonds hereby secured, or until default shall have been made in the due and punctual performance and observance of some covenant or condition hereof, obligatory upon the company, and until

such default shall have continued beyond the period of grace, if any herein provided in respect thereto, the company may withdraw from the trustee and the trustee shall pay over or assign to the company, or its nominees any of the securities theretofore deposited and pledged hereunder, provided that such withdrawal shall not reduce the amount of securities remaining in the hands of the trustee below the amount hereinbefore provided in relation to the amount of bonds outstanding, or unless the company shall substitute in lieu of the securities so withdrawn, other securities which fulfill the requirements as to trust property herein stated."

On January 15, 1929, after the trustee had received the sum of $484,500, the First National Company was permitted to withdraw into its own hands from the collateral held by the trustee, first mortgage bonds in the face amount of $261,000; and in addition, by written instructions, it authorized the trustee to release the Scheuer-James mortgage and the surety bond "free, clear and discharged from the lien of any trusts, and to hold the same as and for the property of the said Baltimore Trust Company in its own right"; and it authorized the trustee to execute and deliver any assignments that might be necessary or proper to this end, "and in particular, to assign to the Baltimore Trust Company in its own right all the rights of the said Baltimore Trust Company as trustee" under the surety bond which is the subject of this suit.

Subsequently, to wit, on July 24, 1929, the principal of the debt secured by the Scheuer-James Corporation mortgage became due, and the mortgagor defaulted in payment thereof, and demand was duly made upon the surety, which refused to pay the same. The question for decision is whether, under these circumstances, the surety company was obligated by the terms of its bond to pay to the bank the amount due and owing under said mortgage, or whether, on the other hand, its obligation under the bond expired when the mortgage was withdrawn from the trust estate held by the trustee.

The bank refers to certain provisions in the surety bond and in the trust indenture in connection with which the bond must be construed, such as the phrase in the surety bond declaring that the parties "are held and firmly bound unto the Baltimore Trust Company * * *, as trustee, its successors and assigns," and the provisions of the trust indenture which contemplate the maintenance with the trustee at all times of securities equal in

value to the outstanding bonds, together with surety bonds to insure the payment of mortgages deposited as such securities, and the provision by which the trustee is given power in case of default in payment of the principal or interest of the mortgage bonds, to sell the securities and execute to the purchaser proper assignments and transfers of the property sold (art. 5, sections 3 and 5). The argument is that a guaranty for the payment of money is generally assignable along with the obligation which it is given to secure; and that when the court is called upon to construe ambiguous provisions of a surety bond issued by a compensated surety, it should follow the rule laid down in Maryland Casualty Co. v. Fowler (C. C. A.) 31 F.(2d) 881, 63 A. L. R. 1375, and adopt that interpretation which favors the party to be protected. So it is said that the surety bond in this case shows on its face that it is generally assignable; that the term "obligee" was used to signify not only the trustee but any subsequent holder, and that the surety is liable to any one into whose hands the surety bond may come by assignment if the principal does not pay the amount secured by the mortgage when it becomes due. It is suggested that there was no change in the principal named in the bond, no material alteration in the main obligation which the bond was given to secure, and no increase in the duties imposed upon the principal under the bond, but the only change was in the holder of the guaranteed obligation and a corresponding change in the obligee of the surety bond. Longfellow v. McGregor, 61 Minn. 494, 63 N. W. 1032, and American Surety Co. v. Campbell & Zell Co. (C. C. A.) 138 F. 531, are especially relied upon.

On the other hand, it is contended that the words "successors and assigns" indicate only "successors and assigns in the trust hereby created." The latter phrase is in fact used in the granting clause of the trust indenture in connection with the designation of the named trustee; and the indenture further provides for a successor trustee in case of the resignation or removal of the trustee. (Article 7, sec. 20.) In such case, it becomes the duty of the trustee, upon the request of its successor, to execute and deliver any instruments of assignment or transfers of rights under the trust indenture. These and other provisions of the trust indenture and the surety bond, more fully set out in the opinion of the District Court, 3 F. Supp. 404, lead the surety to contend that the surety bond was not intended to guarantee the payment of the principal and interest of the hypothecated mortgage to every holder thereof, but only to guarantee the payment of a sum equal to that principal and interest to the bondholders of the mortgage company and to their trustee, so long as the mortgage is held by the trustee. Hence it is said that the surety bond in this case was assignable only to a successor in trust and could not even be lawfully transferred by the trustee to a purchaser of the mortgage in case of a default by the First National Company in the payment of the principal or interest on the mortgage bonds.

We do not find it necessary to define the precise extent to which in all contingencies the surety bond would be assignable. It is sufficient to determine the more narrow question as to whether the surety bond was intended to insure the payment of the amount secured by the mortgage with interest when due, if, prior to any default on the mortgage or on the mortgage bonds, the mortgage company should withdraw the mortgage and the surety bond from the trust estate, as permitted by the provisions of article 2, section 3 of the trust indenture, and should assign them to a stranger to the trust. For under these circumstances, we think, the obligation of the surety company under its bond would expire, and no rights thereunder would pass to the assignee of the mortgage.

It is, of course, obvious that the surety bond was primarily given to fortify the security of the Scheuer-James Corporation mortgage, so that the mortgage bonds, in the hands of the holders thereof, would be supported not only by the value of the mortgaged property, but also by the obligation of the surety. The protection of the holders of the mortgage bonds was the prime consideration. This purpose is seen in the condition of the surety bond itself, whereby the obligation of the principal and surety becomes void if the principal pays to the obligee the amount secured by the mortgage when due. When, therefore, the mortgage is withdrawn from the securities deposited in trust for the protection of the mortgage bondholders, either because there is an excess of securities in the trustee's hands, or because some equally valuable securities have been deposited in its place, it ceases to be of interest to the bondholders and the terms of the trust, so far as it is concerned, are satisfied. It follows that, in this case, there has been no breach of the condition of the bond. The principal was not obliged to pay to the obligee the amount secured by the mortgage until it was due. More than six months before it fell due, the mortgage company withdrew the mortgage from

the trust and paid into the hands of the trustee a sum of money equal to the mortgaged debt. Thereby, the bondholders received precisely the same benefit as if the mortgage had been retained by the trustee and had been paid in full upon maturity, and the surety bond, having served its purpose, was discharged.

It becomes unimportant to decide the question of the assignability of the surety bond because, in a true sense, there was no assignment of the surety bond by the trustee to the bank. There is therefore no basis for the contention that the bank is entitled to all of the rights conferred by the surety upon the trustee, its successors, and assigns. Under the terms of the trust indenture, the trustee had no authority to assign the mortgage or the surety bond held by it in trust, so long as there was no default under the mortgage, or the trust indenture, unless the assignment should be made to a successor in the trust, or to the mortgage company itself, or to its nominee upon a withdrawal of the security and surety bond under article 2, section 3, of the trust indenture. In the case of an assignment to the nominee of the mortgage company, such as took place in the pending case when the trustee assigned the mortgage to the bank at the direction of the mortgage company, the transaction was nominally an assignment from the trustee to the bank, but in legal effect, the mortgage was transferred back to the mortgage company, its owner, who alone had the right to receive it free from the trust, and thence by the mortgage company to the bank in the performance of a contract between them which had no legal relationship to the trust. When the principal obligor in the bond thus acquired the guaranteed debt, the obligation of the surety was at an end. Fluck v. Hager, 51 Pa. 459, 91 Am. Dec. 132; Brandt on Suretyship, § 332.

The appellant places great stress on the consideration that, if the surety bond should be good not only in the hands of the trustee and its successors in the trust, but also in the hands of any assignee of the mortgage, even before default in the payment of the mortgage bonds or of the mortgage itself, the mortgage company could more easily realize upon the mortgage thus secured; and that thereby the mortgage bondholders would benefit, when, as in this case, the mortgage company should need to raise money on the security of the mortgage to pay off the mortgage bonds. Undoubtedly this is true; but it does not follow that the surety company intended to guarantee the mortgage, no matter into whose hands it might come, or to what purposes it might be put. The framework of the transaction indicates that the surety intended to guarantee the payment of the indebtedness secured by the mortgage so long as it was held as one of the securities of the trust, and we find no indication that the surety's obligation was to continue when the mortgage should be withdrawn as one of the securities held by the trustee, and used over again by the principal in the bond in some other independent transaction.

Affirmed.